IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ASHLIE WESSEL, | ) |
|       Plaintiff, | ) |
| vs. | ) Case No. 21 C 3287 |
| ALEXIAN BROTHERS HEALTH SYSTEM and R1 RCM, INC., | ) |
|       Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

      Ashlie Wessel alleges that she is jointly employed by Alexian Brothers Health System and one of its vendors, R1 RCM Inc., as a patient registration representative at a healthcare facility that Alexian Brothers operates in Hoffman Estates, Illinois. Wessel, who is Caucasian, alleges that in 2018, she observed disparate, favorable treatment of a Black co-worker named Jasmine (the Court has not been given her last name) who would clock in for work and then leave, causing extra work and stress for other co-workers on her shift. Wessel reported this to her supervisor, who said her concerns would be dealt with. Instead, Wessel alleges, the supervisor made Jasmine aware of her complaint, which, she says, predictably led to retaliation and verbal harassment. Wessel complained about this, too, but her supervisor rebuffed her complaint.

      Jasmine's harassment of Wessel continued, and she reported this as well, asking why nothing was being done. She contends the supervisor told her that nothing could be done because Jasmine was Black. Later, at an off-site family event involving a

colleague, another co-worker, who Wessel later learned was a friend of Jasmine, acted flirtatiously toward her and then, at work, began falsely telling co-workers that Wessel had made sexual advances toward her. Wessel again complained to her supervisor, but nothing was done.

In June 2019, Wessel says, after Jasmine was no longer employed by Alexian Brothers or R1, the supervisor disciplined Wessel in an unspecified way, citing her interactions with Jasmine. Wessel says that this was a pretext for retaliation regarding her complaints about Jasmine. Wessel also alleges that the supervisor, again in retaliation, disclosed private health information of Wessel's mother to co-workers, despite having been asked to keep it confidential.

Wessel says that she also made complaints to the supervisor and to human resources regarding a co-worker named Carol who made "inappropriate comments about Plaintiff's body" as well as "intolerant religious remarks." Compl. ¶ 30. She says that nothing was done in response to her complaints.

Wessel also alleges that the same supervisor "orchestrated a conflict" between her and a co-worker named Samantha (last name not provided) and "encouraged Samantha to meet Plaintiff in the parking lot to physically attack Plaintiff after her shift." *Id.* ¶ 31. The supervisor accomplished this, Wessel says, by telling Samantha "lies about Plaintiff to incite Samantha to become violent against Plaintiff" and by giving her "information about Plaintiff's shift and when Plaintiff would be in the parking lot." *Id.* The supervisor did this, Wessel says, despite (or perhaps because of) knowledge that Samantha had been fired from a previous job due to a parking lot altercation. Samantha "sent threatening text messages" to Wessel, *id.* ¶ 33, who shared them with

supervisors, who she says did nothing. Wessel says she was threatened by Samantha by phone on multiple occasions, including by statements that she "would bring a number of people with her to participate in attacking Plaintiff." *Id.* ¶ 34. According to Wessel, police were contacted and intervened to prevent an attack. Samantha, Wessel says, later told her that this had all been instigated by the supervisor. Wessel says that this, too, was in retaliation for her prior complaints.

      The final incident alleged by Wessel took place in April 2020, about a month after she filed EEOC charges against both Alexian Brothers and R1, and during a period when she was on approved family medical leave due to her mother's serious medical condition, which involved treatments known to weaken the immune system. She alleges that her supervisors and/or R1's human resources or legal department "coordinated to leverage the [m]other's [m]edical [c]ondition against Plaintiff in the context of the Covid-19 pandemic, for purposes of discrimination and retaliation" for filing the EEOC charges and/or making the earlier complaints. *Id.* ¶ 42. Among other things, she says, she was singled out to report for in-person work at facilities where she would be in close proximity to patients with COVID-19, "in part to cause Plaintiff distress concerning any potential exposure that she might introduce to her mother as a result." *Id.* ¶ 43. Wessel alleges that pretextual reasons were given as an excuse to require her to report for work physically rather than remotely, even though similarly situated co-workers were allowed to work remotely. Wessel says that during the same period, her workload was increased even though other co-workers' workloads were reduced. This, too, was retaliatory according to Wessel.

      Wessel has filed a four-count complaint. Count 1 is a claim for retaliation under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1). Count 2 is a state-law claim entitled "negligent failure to supervise," which concerns Wessel's claimed mistreatment at the hands of her supervisor. Count 3 is entitled "respondeat superior"; it alleges defendant's liability for Wessel's claimed mistreatment at the hands of her supervisor and human resources personnel. Count 4 is a claim for intentional infliction of emotional distress.

## Discussion

Alexian Brothers and R1 have moved to dismiss all four of Wessel's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss the complaint must state a claim for relief that is plausible on its face." *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019) (internal quotation marks omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (internal quotation marks omitted).

**1.    Title VII retaliation claim**

Regarding Wessel's Title VII retaliation claim, defendants argue that the alleged retaliatory conduct is insufficiently severe to support a viable retaliation claim. Wessel does not contend she was terminated, but actions falling short of "ultimate employment decisions" can form the basis for a retaliation claim if they are objectively "likely to deter victims of discrimination" from making complaints about their treatment. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67–68 (2006). The Supreme Court stated this "standard in general terms because the significance of any given act of retaliation will

often depend upon the particular circumstances. Context matters." *Id.* at 69.

In this case, Wessel alleges that in response to her complaints about racially discriminatory favorable treatment of a co-worker, she was subjected to repeated threats of physical violence; confidential medical information about her sick mother was leaked to co-workers; she was deliberately assigned a workspace that subjected her to coronavirus infection in a way that placed her at risk of transmitting the virus to her mother, who had an impaired immune system; her complaints about repeated gender-based and other harassment by co-workers were ignored; and she was subjected to other unspecified discipline. Dismissal—which would require the Court to find that this sort of mistreatment, taken as a whole, would not likely deter a discrimination victim from making a complaint—would turn Rule 12(b)(6) on its head, as it would amount to drawing inferences *against* the plaintiff. The Seventh Circuit has stated that "changes to the employee's work conditions including subjecting her to humiliating, degrading, unsafe, unhealthful, or otherwise significant negative alteration in her work place environment" can suffice, *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 704 (7th Cir. 2012) (internal quotation marks and alteration omitted), and a "significant negative alteration in [the] work place environment" is exactly what Wessel alleges here. The Court cannot say at this juncture that the retaliatory conduct Wessel alleges is insufficient as a matter of law. The Court declines to dismiss her Title VII retaliation claim.

2.  **Negligent supervision claim**

Defendants argue that Count 2, entitled as a "negligent supervision" claim, is barred by the Illinois Workers Compensation Act. The IWCA provides an administrative

remedy for injuries employees incur "arising out of in the course of [their] employment." 820 Ill. Comp. Stat. 305/11. Where it applies, the IWCA provides an exclusive remedy; it "imposes liability without fault upon the employer and, in return, prohibits common law suits by employees against the employer." *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462, 564 N.E.2d 1222, 1225 (1990); *see also* 820 Ill. Comp. Stat. 305/5(a), 305/11 (exclusivity provisions).

Defendants' contention that the IWCA's exclusivity provisions bar Count 2 amounts to an affirmative defense. *Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1039 (7th Cir.) 2018) ("If an employer is sued in common law, the employer may raise the IWCA's exclusivity provisions as an affirmative defense."). "If [the employer] establishes the elements of the affirmative defense, then the burden shifts to the plaintiff to show that his claims are not subject to the IWCA or its exclusivity provisions." *Id*. A plaintiff need not anticipate and "plead around" affirmative defenses in her complaint. *See, e.g., United States v. Northern Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004). But "when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law, dismissal is appropriate." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017).

To establish that her claim is not barred by the IWCA, Wessel must show that her injury "(1) was not accidental, (2) did not arise from [her] . . . employment, (3) was not received during the course of employment, or (4) was noncompensable under the [IWCA]." *Baylay*, 881 F.3d at 1039 (alterations in original) (quoting *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237, 408 N.E.2d 198, 202 (1980)). Wessel contends that, based on the allegations of her complaint, her injuries were not accidental but rather

6

were intended by defendants' supervisory and human resources personnel. Taking the complaint in the light most favorable to Wessel—as required when considering a motion to dismiss for failure to state a claim—the Court cannot say at this juncture that the injuries she alleges were accidental. Thus dismissal of Count 2 based on the IWCA is inappropriate, at least at this stage of the case.

### 3. Respondeat superior claim

Defendants seek dismissal of Count 3 on the ground that respondeat superior (vicarious liability for an employee's torts) is not an independent claim. In response, Wessel attempts to support the claim by basing it on co-worker Samantha's assault upon her—namely Samantha's threats of physical violence, which Wessel alleges her supervisor orchestrated. The Court agrees with defendants, however, that as pleaded in Wessel's complaint, she has not stated an underlying claim of assault, as she has not alleged that Samantha's threats created a reasonable apprehension of an *imminent* battery. *See Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004) (Illinois law). More particularized pleading might cure this deficiency, but Count 3 does not state a claim as currently pleaded.

### 4. Intentional infliction of emotional distress claim

Finally, the Court addresses defendants' contention that Count 4 is barred by the Illinois Human Rights Act and in any event does not state a viable claim for intentional infliction of emotional distress (IIED). The IHRA provides a remedy for certain types of civil rights claims and specifies that "no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 Ill. Comp. Stat. 5/8-111(D). A common law tort claim is preempted by the IHRA if it is

"inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [IHRA] itself." *Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017) (quoting *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 517, 687 N.E.2d 21, 23 (1997)); *see also Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017). The key question is "whether the plaintiff can prove the elements of the tort 'independent of any legal duties created by the Illinois Human Rights Act.'" *Richards*, 869 F.3d at 564 (quoting *Maksimovic*, 177 Ill. 2d 511, 687 N.E.2d at 24).

That is certainly the case here. As discussed, Wessel alleges that the defendants caused her to be subjected to threats of physical violence, disclosed private medical information about her family member, and deliberately subjected her to working conditions that they knew would put her and the family member at risk of severe illness. None of that is in any way dependent on any legal duty created by (and only by) the IHRA.

Defendants argue in the alternative that Wessel's allegations do not add up to a plausible IIED claim. To prevail on an IIED claim, a plaintiff must establish that "(1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006) (internal quotation marks omitted)). Factors considered in determining whether conduct is extreme and outrageous include the degree of power or authority the defendant had over the plaintiff; whether the defendant reasonably believed the objective it was pursuing was reasonable; and "whether the plaintiff is particularly

8

susceptible to emotional distress because of some physical or mental condition or peculiarity." *Honaker v. Smith*, 256 F.3d 477, 490-92 (7th Cir. 2001).

The caselaw reflects some reluctance to allow IIED claims arising from employer-employee conflicts, *see id*. at 491, the concern being that this would authorize IIED claims by most workers who are terminated or even disciplined. *See, e.g., Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483992, ¶ 27, 992 N.E.2d 509, 518. But there is no absolute ban on IIED claims in the employment context. As the Seventh Circuit has stated, actionable extreme and outrageous conduct may be considered to have occurred "where the employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Honaker*, 256 F.3d at 491; *see Naeem*, 444 F.3d at 604 (permitting an IIED claim arising from an employment relationship).

Some of what Wessel alleges does not differentiate her case from the type of employment dispute that likely does not give rise to a viable IIED claim—for example, her allegations about not taking her complaints seriously and about being assigned extra work and scrutinized more closely. Some of what Wessel alleges, however, is significantly more severe than the "normal" employer-employee dispute. This includes Wessel's contentions that her supervisor orchestrated threats of physical violence against her and also sought to deliberately put her mother's fragile health at risk by assigning Wessel to work in a high-coronavirus-exposure setting. The Court is persuaded on this basis that dismissal of Wessel's IIED claim under Rule 12(b)(6) would be inappropriate.

## Conclusion

For the reasons stated above, the Court dismisses Count 3 of plaintiff's complaint for failure to state a claim but otherwise denies defendants' motion to dismiss [dkt. no. 11].

Date: November 2, 2021

_____
MATTHEW F. KENNELLY
United States District Judge